UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                        :

MUTAHER SAEED AL-MASHWALI et al.,      :
                              Plaintiffs,  :

                                        :           23 Civ. 7967 (LGS)
             -against-          :
                                        :      __OPINION AND ORDER__

U.S. CITIZENSHIP AND IMMIGRATION     :
SERVICES et al.,                         :
                           Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Mutaher Saeed Al-Mashwali ("Mutaher"), a Yemeni national and naturalized

United States citizen who lives in New York, and Plaintiffs Khabab Mutaher Saeed Al-Mashwali

("Khabab"), Salma Mutaher Saeed Al-Mashwali ("Salma") and Ahmed Mutaher Saeed Al-

Mashwali ("Ahmed") (collectively, "Offspring Plaintiffs"), Yemeni nationals and biological

children of Mutaher, bring this action under the Administrative Procedure Act (the "APA"), the

Immigration and Nationality Act (the "INA"), the Fifth Amendment of the United States

Constitution, the Religious Freedom and Restoration Act of 1993 (the "RFRA") and the

Declaratory Judgment Act against Defendants United States Citizenship and Immigration

Services ("USCIS"), Director of USCIS, Secretary of the Department of Homeland Security, and

the Board of Immigration Appeals ("BIA").  Defendants move for summary judgment on all

claims.  Plaintiffs cross-move for summary judgment on the APA claim.  For the following

reasons, summary judgment is granted to Defendants and denied to Plaintiffs.

## I.    BACKGROUND

### A.    Regulatory Background

The INA permits a United States citizen to file a Form I-130, Petition for Alien Relative, on behalf of an immediate relative, to obtain an immigrant visa.  8 U.S.C. §§ 1153(a)(1); 1154(a)(1)(A)(i).  In the case of a child beneficiary, the petitioner bears the burden to establish the claimed parent-child relationship, 8 C.F.R. § 204.1(f)(1), including providing "all initial evidence required," also referred to as primary evidence, *id.* § 103.2(b)(1).  The primary evidence requirement varies according to the child's legitimacy status.  Specifically, a father petitioning for a "legitimate child" must provide the child's birth certificate, the parents' marriage certificate and proof of legal termination of the parents' prior marriages, if any.  *Id.* § 204.2(d)(2)(i).  A father petitioning for a "legitimated child" must submit the child's birth certificate, the parents' marriage certificate or other evidence of legitimation.  *Id.* § 204.2(d)(2)(ii).  A father petitioning for an "illegitimate child" must present evidence of paternity and a bona fide father-child relationship.  *Id.* § 204.2(d)(2)(iii).  The primary evidence of paternity is a birth certificate, and the primary evidence of a bona-fide relationship must show "[e]motional and/or financial ties or a genuine concern and interest by the father for the child's support, instruction, and general welfare."  *Id.*

The lack of primary evidence "creates a presumption of ineligibility."  *Id.* § 103.2(b)(2)(i).  This presumption could be overcome by secondary evidence.  *Id.*  "Secondary evidence may take the form of historical evidence; such evidence must have been issued contemporaneously with the event that it documents and may include, but is not limited to, medical records, school records, and religious documents."  8 C.F.R. § 204.2(d)(2)(v).  Secondary evidence will also "be evaluated for its authenticity and credibility."  *Id.*

In adjudicating I-130 petitions, Defendants must conduct "an investigation of the facts in each case."  If Defendants determine that "the facts stated in the petition are true" and that the beneficiary qualifies as an immediate relative, they "shall" approve the petition.  8 U.S.C. § 1154(b).  USCIS has the "sole discretion" to determine "what evidence is credible and the weight to be given [to] that evidence."  8 C.F.R. § 204.1(f)(1).

### B.    Factual Background

The facts below are drawn from the administrative record.

#### 1.    Immigration Applications

Mutaher is a Yemeni national.  In 2010, he applied for naturalization and represented that he had three prior marriages and three children.  The application states that he was first married to Atikah Abdulrab, a Yemeni national, in 1992, and the marriage ended when she died in 1997.  Mutaher subsequently married a U.S. citizen in 1998, divorced in 2002, remarried another U.S. citizen in 2003 and divorced in 2006.  His three children, not including the Offspring Plaintiffs, were born in 1992, 1995 and 1997, respectively, and live in Yemen.

In 2017, Mutaher filed I-130 petitions for each of the Offspring Plaintiffs (the "Petitions") as his legitimate children, born "to parents who were married to each other at their births."  Mutaher submitted the Offspring Plaintiffs' birth certificates, prepared in 2017, and his certificate of marriage to Atekah Ahmed Abdurab Thabet ("Thabet"), prepared in 2013.  Some statements in the submissions are internally inconsistent or contradict Mutaher's 2010 naturalization application.  The most glaring contradiction is that the naturalization application as well as the Petitions state that Thabet died in 1997, but the birth certificates show that Thabet gave birth to the Offspring Plaintiffs well into the 2000s.

### 2.  Agency Review

In March 2018, USCIS issued Requests for Evidence ("RFEs") to Mutaher regarding all Petitions for the Offspring Plaintiffs.  USCIS noted in the RFEs that Mutaher stated that Mutaher and Thabet were married when Khabab and Salma were born, on August 20, 2008, and March 2, 2010, respectively, but Mutaher's naturalization certificate, dated March 17, 2010, shows that he was divorced.  The RFEs asked for proof of legal termination of Mutaher's marriage to Thabet. The RFEs also asked for proof of a bona fide father/child relationship before the Offspring Plaintiffs reached the age of twenty-one.  On June 19, 2018, Mutaher responded to the RFEs, but did not provide proof of termination of his marriage to Thabet.

On February 15, 2019, USCIS noticed Mutaher for an interview.  The stated reason was that, "[a]fter review of related A-files and issuance of a RFE for secondary evidence, it has not been established that the [parent-child] relationship exists."  On March 8, 2019, Mutaher appeared at the interview, presented DNA reports and evidence of his travel to Yemen, but did not address the termination of his marriage to Thabet, nor did he testify or answer any questions, as advised by his counsel.

On March 18, 2019, USCIS issued Notices of Intent to Deny (the "March NOIDs"), stating that USCIS records "contain[ed] a death certificate for Atekah Ahmed Abdulrab [Thabet] stating that she died on 10/17/1997," and USCIS could not accept the birth certificates showing birth dates after the purported death of Thabet.  Citing *Matter of Ho*, 19 I&N Dec. 582, 591-592 (BIA 1988), the March NOIDs state, "[i]t is incumbent on [Mutaher] to resolve any inconsistencies in the record by independent objective evidence . . . pointing to where the truth, in fact, lies."  On April 17, 2019, Mutaher responded to the March NOIDs with further evidence.

On May 6, 2019, USCIS again issued Notices of Intent to Deny (the "May NOIDs"), rejecting the birth certificates because of Thabet's death certificate. USCIS then considered whether the Offspring Plaintiffs could qualify as children born out of wedlock, which required evidence of a bona fide parent-child relationship. USCIS stated that, apart from evidence that Mutaher had visited Yemen six times in the past ten years, he had presented no evidence of financial support or active role in the Offspring Plaintiffs' lives, and thus failed to carry his burden of showing that the Offspring Plaintiffs qualify as his children for immigration purposes. On June 4, 2019, Mutaher responded with further evidence attesting to the parent-child relationships, including school records, tuition payment history, utility bills, text messages and more affidavits.

On June 19, 2019, USCIS denied the Petitions. The denials acknowledge the additional evidence but reiterate that it "does not address the most important issue -- that of the mother's death certificate." Citing *Matter of Pang*, 11 I&N Dec 213 (BIA 1965), the denials find that Thabet's death certificate is admissible as a voluntary prior submission and that Mutaher has "either provided false information on the instant Form I-130 under penalty of perjury or provided previous false testimony and fraudulent documentation." The denials conclude that Mutaher has not met his burden of proof and reject the Petitions.

Mutaher appealed all three denials to the BIA. The BIA dismissed the appeals on the ground that "the DNA testing and marriage certificate do not resolve the significant discrepancy in the record that his spouse and the mother of the beneficiary purportedly died before the beneficiary was born." Because Mutaher maintained on appeal that the Offspring Plaintiffs were born in marriage, consistent with the Petitions, the BIA found the other routes to qualify them did not apply. Mutaher then sought relief in this Court.

5

## II.    THE APA CLAIM

### A.    Arbitrary and Capricious Review

Where, as here, "a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal, and [t]he entire case on review is a question of law." *Macks USA, Inc. v. U.S. Dep't of Lab.*, No. 23 Civ. 7476, 2024 WL 4728902, at *1 (S.D.N.Y. Nov. 8, 2024).[1] The APA directs that agency actions be "h[e]ld unlawful and set aside" if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

> An agency action is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Kakar v. U.S. Citizenship & Immigr. Servs.*, 29 F.4th 129, 132 (2d Cir. 2022).  "Under this narrow standard of review, a court is not to substitute its judgment for that of the agency." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020).  A court's review of the agency decision is limited to examining "the existing administrative record" and "evaluating the agency's contemporaneous explanation." *Kakar*, 29 F.4th at 132.

"[S]ummary judgment is appropriate in APA cases because the questions on review" -- "whether the agency acted arbitrarily, capriciously or in some other way that violates 5 U.S.C. § 706" -- "are purely legal and are amenable to summary disposition." *Macks USA, Inc.*, 2024 WL 4728902, at *1.  Courts should

> grant summary judgment to the Government unless it determines by a preponderance of the evidence that the agency has not considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

for its action including whether there is a rational connection between the facts found and the choice made.

*Cuckic v. Jaddou*, No. 21 Civ. 8395, 2023 WL 2586031, *4 (S.D.N.Y. Mar. 21, 2023). "When a petitioner bears the burden of proof, his failure to adduce evidence can itself constitute the substantial evidence necessary to support the agency's challenged decision." *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020).

### B.    Discussion

Summary judgment is granted to Defendants on the APA claim because Defendants' denials of the Petitions were not arbitrary, capricious, an abuse of discretion or contrary to law.

Mutaher's consistent position has been that the Offspring Plaintiffs are his biological offspring, born in wedlock to Thabet, his wife since 1990. But Mutaher did not submit the evidence required to qualify the Offspring Plaintiffs under 8 U.S.C. § 1154(a)(1)(A)(iv), which rendered them presumptively ineligible. Regardless of the children's legitimacy status, Mutaher was required to submit valid birth certificates. 8 C.F.R. §§ 204.2(d)(2)(i)-(iii). For a legitimate or legitimated child, a relevant valid marriage certificate was also required. 8 C.F.R. §§ 204.2(d)(2)(i)-(ii). If the required evidence is unavailable, or the proffered evidence is "not sufficiently reliable," applicants are presumed to be ineligible unless secondary evidence overcomes this presumption. *Id.* § 103.2(b)(2)(i); *Matter of Rehman*, 27 I&N Dec. 124 (BIA 2017) (directing the USCIS to elicit and consider secondary evidence when the submission did not meet the preponderance of the evidence standard). USCIS retains the "sole discretion" to determine "what evidence is credible and the weight to be given [to] that evidence." 8 C.F.R. § 204.1(f)(1).

Mutaher filed the Petitions with the birth certificates of the Offspring Plaintiffs and his certificate of marriage to Thabet, but these documents contradict his other immigration

documents. Mutaher's Petition for Salma states that she was born in wedlock on March 2, 2010, but Mutaher's naturalization certificate designates him as "divorced" as of March 17, 2010. USCIS requested additional evidence, including proof of legal termination of Mutaher's marriage with Thabet. Mutaher responded to other parts of the RFEs but did not provide the requested evidence of marriage termination. Nor did he answer any questions at the later interview. USCIS examined Mutaher's naturalization records, which state that Thabet died in 1997. Considering that Thabet could not have been deceased in 1997 yet given birth to the Offspring Plaintiffs thereafter, USCIS rejected the birth certificates in the March NOIDs.

Mutaher responded with further evidence of his father-child relationship with the Offspring Plaintiffs, but he provided no evidence resolving the inconsistencies regarding Thabet. USCIS considered the additional evidence and ultimately denied the Petitions because none of the evidence addressed the inconsistency created by Thabet's death certificate. USCIS concluded that Mutaher had "either provided false information on the instant Form I-130 under penalty of perjury or provided previous false testimony and fraudulent documentation to [USCIS]." The BIA dismissed Mutaher's appeals also for the unresolved "significant discrepancy . . . that his spouse and the mother of the beneficiary purportedly died before the beneficiary was born."

Defendants' denials were not arbitrary and capricious. They "considered the pertinent evidence," including Mutaher's submissions and prior immigration history. *Cuckic*, 2023 WL 2586031, at *4. Defendants "examined the relevant factors" by discharging their independent duty to investigate the facts and deciding whether Plaintiffs established the relationship by a preponderance of evidence. *Id.* Defendants "articulated a satisfactory explanation for [their] action including whether there is a rational connection between the facts found and the choice

made" by stating in the denials and the appeal decision that the inconsistency created doubt about the proffered primary evidence, and that the secondary evidence failed to overcome the presumption of ineligibility.

Defendants' denials were supported by the factual contradictions in Mutaher's submissions and were within Defendants "sole discretion" to determine "what evidence is credible and the weight to be given [to] that evidence . . . ." *Id.*; 8 CFR § 204.1(f)(1).  Mutaher's naturalization records attest that as of December 2009 when he submitted the naturalization application: (1) Thabet died in 1997; (2) Mutaher was divorced, having divorced another woman in 2006 and (3) Mutaher had only three children, who were born between 1992 and 1997 and were not the Offspring Plaintiffs.  The Offspring Plaintiffs' birth certificates, on the other hand, show that: (1) Thabet was alive at least until Salma's birth in 2010; (2) Thabet was married to Mutaher when the Offspring Plaintiffs were born; and (3) Ahmed and Khabab were born before December 2009 and should have been included as Mutaher's children in his naturalization application.  Defendants did not abuse their discretion in refusing to credit the contradictory evidence and denying the Petitions because Plaintiffs did not carry their burden.

Plaintiffs do not dispute the inconsistency between their assertion now that Ms. Thabet is alive and has been married to Mutaher since 1990, and Mutaher's prior submission in his naturalization proceeding.  They argue that Defendants improperly considered the identity of the Offspring Plaintiffs' mother and should have limited their examination to the four corners of the Petitions and accompanying documents, which constitute sufficient primary evidence to qualify the Offspring Plaintiffs as children born in wedlock under 8 C.F.R. Section 204.2(d)(2)(i).  This argument is incorrect.

First, the submissions -- even within their four corners -- raise questions about their validity.  The birth certificates were generated on September 10, 2017, long after the Offspring Plaintiffs were born but only days before the Petitions were filed.  Such "delayed birth certificate[s] [are] not generally conclusive evidence." *Rehman*, 27 I&N Dec. at 126 (noting the delay in registration and the temporal proximity to filing of petition as two factors in evaluating the possibility of fraud).  The marriage registration was also delayed: it reflects an August 2, 1990, marriage but was not generated until April 27, 2013.  This marriage registration and Salma's application represent that Mutaher had been married to Thabet from 1990 to at least March 2, 2010, when Salma was born, but the Petitions state that Mutaher was married to someone else until 2006.  The additional evidence submitted in response included divorce decrees for other marriages that overlapped with the period during which the Offspring Plaintiffs were born.  Defendants thus acted reasonably in requesting and considering additional evidence and did not abuse their discretion in ultimately finding that Mutaher had failed to carry his burden to resolve the ambiguities.  *See AB Disc. Depot, LLC v. U.S. Citizenship & Immigr. Servs.*, No. 20-3245-CV, 2022 WL 453378, at *1 (2d Cir. Feb. 15, 2022) (summary order) (explaining that petitioner has the duty to "resolve any inconsistencies or ambiguities in the record").

Second, Defendants' independent duty to investigate the facts not only authorizes, but often requires, Defendants to go beyond the submissions and consider other available evidence.  *See* 8 U.S.C. § 1154(b); 8 C.F.R. § 204.1(f)(1).  Such evidence includes the applicant's prior immigration submissions, and courts have upheld such cross-checks.  *See, e.g.*, *Ru Jun Zhang v. Barr*, 756 F. App'x 107, 109 (2d Cir. 2019) (summary order) (affirming the agency's denial of the plaintiff's I-130 petition, filed in 2007, after considering her 2002 visa application and

inconsistencies between the two). USCIS's examination of Mutaher's naturalization records, including Thabet's death certificate, to assess the Petitions was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Nor did the BIA on appeal engage in improper fact finding or rely on evidence outside the record. The BIA simply acknowledged the inconsistency identified by USCIS and affirmed the denials because Plaintiffs did not carry their burden of resolving the inconsistency.

Plaintiffs also seem to argue that even if the primary evidence was lacking, Mutaher's additional submission of DNA reports and "substantial evidence of his relationship with his children" would qualify the Offspring Plaintiffs. Although this evidence strengthens the fact that the Offspring Plaintiffs are Mutaher's biological children, it does not support the assertion that they were born *in wedlock* under 8 C.F.R. § 204.2(d)(2)(i), or *legitimated* under 8 C.F.R. § 204.2(d)(2)(ii). While the evidence may enhance the Offspring Plaintiffs' possibility to be qualified as children born out of wedlock under 8 C.F.R. § 204.2(d)(2)(iii), that evidence does not cure the Petitions' overall lack of credibility created by the many inconsistencies. Also, the born-out-of-wedlock theory is inconsistent with Plaintiffs' position throughout the administrative proceeding. While USCIS considered this theory as a potential alternative, USCIS's ultimate refusal to credit this theory, for which Plaintiffs did not advocate, and BIA's subsequent affirmance was not arbitrary or capricious.

Plaintiffs further argue that Defendants' adjudication was impermissibly discriminatory because (1) they consider all Yemeni civil documents suspect, making it impossible for Yemeni petitioners to provide sufficiently reliable primary evidence, and (2) they "always take[] a sworn statement" from Yemeni petitioners but not others. But neither of these alleged practices was the basis for Defendants' adjudication of Plaintiffs' Petitions. Defendants questioned Plaintiffs'

submissions accompanying the Petitions, not because they were Yemeni civil documents, but because they were inconsistent with Mutaher's prior immigration submissions.  Defendants denied the Petitions, not because Mutaher filed no sworn statement, but because he did not resolve the inconsistencies in the record after several opportunities to do so.

Plaintiffs' last argument that the March and May NOIDs inappropriately considered that Mutaher may have engaged in polygamy or extra-marital relationships does not square with the NOIDs' actual language.  The March NOIDs state that USCIS cannot accept the Offspring Plaintiffs' birth certificates because USCIS records contain Thabet's earlier death certificate, and that "[i]t is also incumbent upon [Mutaher] to explain the origin of the death certificate as it was used as evidence to secure a benefit that [Mutaher] might not have been entitled to."  In any event, the May NOIDs make clear that USCIS's alternative consideration of the Offspring Plaintiffs as born out of wedlock was motivated by the contradictory birth and death certificates.

## III.    THE CONSTITUTIONAL AND RFRA CLAIMS

Summary judgment is granted to Defendants on Plaintiffs' constitutional and RFRA claims.  Summary judgment is also granted to Defendants on Plaintiffs' claim under the Declaratory Judgment Act, which is not a separate cause of action but a form of possible relief if Plaintiffs prevailed on another cause of action.

For non-APA claims, summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).  "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment . . . ."  *Id*.  In evaluating "whether there is a

genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id*. "[W]here a movant has shown the existence of a material fact and the nonmovant wishes to challenge it, the nonmovant bears the burden of production to point to significant probative evidence (that is, more than a scintilla of evidence) from which a reasonable factfinder could find for the nonmovant." *Gov't Emps. Ins. Co. v. Mayzenberg*, 121 F.4th 404, 413-14 (2d Cir. 2024) (quoting *Anderson*, 477 U.S. at 252), *unrelated certified question accepted*, No. 129, 2024 WL 5131318 (N.Y. Dec. 17, 2024). "Demonstrating that such issues exist requires the nonmovant to do more than simply show that there is some metaphysical doubt as to the material facts." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022). The nonmovant cannot merely "deny the moving party's allegations in a general way," but instead "must present competent evidence that creates a genuine issue of material fact." *Id.* Defendants' omission of a Rule 56.1 statement is excused because adjudication of Plaintiffs' constitutional and RFRA claims does not require the resolution of any facts subject to dispute.

### A.    Procedural Due Process

Summary judgment is granted to Defendants on the procedural due process claim because Defendants provided Plaintiffs with adequate process. The Due Process Clause of the Fifth Amendment states in relevant part that no person shall "be deprived of life, liberty, or property, without due process of law." To prevail on a procedural due process claim, plaintiffs must establish that they were deprived of "a protected interest" and, if so, that they were "denied adequate notice . . . or a meaningful opportunity to be heard." *Ace Partners, LLC v. Town of E. Hartford*, 883 F.3d 190, 195 (2d Cir. 2018). Assuming without deciding that Plaintiffs have a protected interest in the approval of their Petitions, undisputed facts in the record show that

Defendants provided "adequate notice [and] a meaningful opportunity to be heard." *Id.*

Defendants reviewed the Petitions, issued two NOIDs that listed the reasons for intended denial,

and provided Plaintiffs with several opportunities to supplement the submissions and cure the

deficiencies, including an in-person interview and the requests for further documents. Mutaher

declined to testify or answer questions at the interview, but did avail himself of the opportunity

to supplement his initial Petition. Plaintiffs' argument that Defendants shifted positions between

NOIDs is unpersuasive because, as discussed above, the change of course was prompted by

inconsistencies in Plaintiffs' submissions and was not arbitrary.

###    B.    Equal Protection

Summary judgment is granted to Defendants on Plaintiffs' equal protection claim

because Plaintiffs failed to establish that they have standing to assert the claim. To have

standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision." *Kearns v. Cuomo*, 981 F.3d 200, 207 (2d Cir. 2020).

Plaintiffs have not established that the denials of the Petitions are "fairly traceable" to the

alleged discriminatory practices or that the denials would be "redressed" if Defendants

eliminated those practices. As discussed above, the alleged Yemeni-specific immigration

policies and practices, including the requirement of a sworn statement, were not the basis for

denying Plaintiffs' Petitions. While Plaintiffs "need not allege that [they] would have obtained

the benefit but for the barrier in order to establish standing," Plaintiffs still must show that the

challenged policies were a barrier, i.e., that the policies "prevent[ed] [Plaintiffs] from [obtaining

immigration benefits] on an equal basis." *Ne. Fla. Chap. of Associated Gen. Contractors of Am.*

*v. City of Jacksonville*, 508 U.S. 656, 666 (1993). Plaintiffs have not shown that Defendants

adjudicated Plaintiffs' applications differently from non-Yemeni applicants who could not resolve factual inconsistencies in their submissions. Plaintiffs thus lack standing to challenge the Yemeni-specific policies.

### C.    RFRA and Establishment Clause

Plaintiffs similarly lack standing to assert the RFRA and Free Exercise claims. Plaintiffs allege that Defendants' policy "barring finding the children of Plaintiff Mutaher to be either born in wedlock or out of wedlock on the basis of a question of whether he was married to the claimed mother infringes on Plaintiff Mutaher's right [to be married simultaneously to more than one woman] under sharia law." As discussed above, Defendants did not consider polygamy in denying Plaintiffs' Petitions. The deficiency in the Petitions was not that the Offspring Plaintiffs were the biological children of one woman when Mutaher was married to another woman, but rather that the Offspring Plaintiffs were purportedly the biological children of a woman whom Mutaher had represented was deceased at the time of their births.

## IV.    PLAINTIFF'S REQUEST FOR DISCOVERY

Plaintiffs request discovery relating to the Constitutional and RFA claims, specifically concerning USCIS adjudication policies relating to Yemeni applicants, the treatment of children born of polygamous relationships, and USCIS policies regarding the application of sharia religious law. Even if theoretically permissible,[2] discovery is denied because the information

---

[2] Judge Caproni addressed a similar discovery issue in *Hadwan v. U.S. Dep't of State*, No. 17 Civ. 578, 2021 WL 4037714, at *6 n.9 (S.D.N.Y. Sept. 3, 2021). She observed that "[t]here is no clear consensus among district courts whether the assertion of constitutional claims takes a case outside the procedural strictures of the APA, including the record review rule." *Id.* Nevertheless, she "agrees that, as a general matter, to allow broad ranging discovery under Rule 26, beyond the administrative record in every case where a plaintiff alleges a constitutional claim, would be inappropriate and render meaningless the APA's restriction of judicial review to the administrative record." *Id.*

would make no difference to the outcome of those claims.  As discussed above, the denials of Plaintiffs' Petitions were based on deficiencies in Mutahir's application and not on any of the subjects about which discovery is requested.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**, and Plaintiffs' cross-motion for summary judgment is **DENIED**.  The Clerk of Court is respectfully directed to close the motion at Dkt. No. 28 and close the case.

Dated: March 20, 2025
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE